*182 OPINION.
Guaupnek:
The issues in this appeal, briefly, are': (1) The right of the taxpayer to deduct the amount spent in 1919 for advertising and promoting the sale of Liberty bonds. (2) The amount allowable as deductions for depreciation for 1919 and 1920. (3) Loss on sale of capital assets in 1920. (4) Adjustment of invested capital for 1919 and 1920 on account of depreciation deductions and charges to depreciation reserves on assets sold or discarded. (5) Reduction of invested capital for 1919 and 1920 on account of taxes for prior years.
On the first of these questions the parties stipulated that the expenditures of $45 in 1919 for advertising and promoting the sale of Liberty bonds was for an advertisement over the corporation’s name. This advertisement was made in accordance with the custom of the time. Such an advertisement was a combination of patriotic endeavor and business publicity, and received the recognition of the Commissioner in article 562 of Regulations 45. A corporation of the cliaracter of the taxpayer is entitled to deduct amounts spent in advertising as a part of its ordinary and necessary business expense and, as the particular form of advertising to be employed is, of necessity, within the judgment of the officers of such a corporation as the taxpayer, we believe that the Commissioner improperly disallowed (die deduction.
With respect to the question of depreciation, we found as facts that allowances computed at 7% per cent on machinery and 3 per cent on buildings represented reasonable amounts to be allowed for depreciation sustained in 1919 and 1920. The amounts to be allowed as deductions for depreciation should be computed at these rates and the tax recomputed accordingly.
With respect to claimed loss on the sale of capital assets in 1920, the taxpayer sets forth as the facts upon which it relies that—
Tlie loss oil the sale or discard of capital assets treated as a deduction from income by the taxpayer in the year 1920 is $6,956.53, whereas the Commissioner has allowed a loss of $6,843.20. This difference is due to the change in depreciation rates for the years 1918 and 1919 as made by the Commissioner.
*183 These allegations of fact are admitted by the Commissioner in his answer. These allegations and the Commissioner’s answer thereto require us, under section 274(g) of the Eevenue Act of 1926, to consider the depreciation to be allowed for 1918. The rates at which depreciation of assets is to be computed for 1918, 1919, and 1920, are set forth above, and any loss sustained upon the sale of assets in 1920 should be determined after making allowance for depreciation by the application of those rates. Section 274(g), however, prohibits our ■ redetermining the correctness of the tax for the year 1918.
. As to the fourth question, the rates as set forth in the findings of fact should be applied for the years 1918, 1919, and 1920, in determining the amount of the reserves for depreciation to be taken into account in computing the invested capital for those years.
With respect to the last question the taxpayer contends that surplus at the beginning of any taxable year may not be reduced on account of taxes for a preceding year. The principle here involved is settled by section 1207 of the Eevenue Act of 1926. There is nothing in the record to show that the Commissioner’s method is not in accordance with the regulations, and under section 1207 we must approve the method used.
The invested capital for 1919 and 1920 should be adjusted in ac- ' cordance with findings 8 and 9. As the payments of additional taxes for 1916 and 1917 mentioned in findings 10 were not made until after the beginning of 1920, the taxpayer’s invested capital for 1919 and 1920 was properly determined by a reduction of the amount of such taxes.
Order of redetermination will he entered on 15 days' notice, under Bule 50.